553 P.2d 721

Aureliano **TORRES**, Administrator of the Estate of Ignacio Torres, deceased, Plaintiff-Appellee,

v.

David R. **SIERRA**, Administrator of the Estate of John R. Owens, deceased, Defendant-Appellant.

No. 2120.

Court of Appeals of New Mexico.

July 6, 1976.

Rehearing Denied July 19, 1976.

Certiorari Denied Aug. 18, 1976.

Eugene E. Klecan, Klecan & Roach, P. A., Albuquerque, for defendant-appellant.

Frank Bachicha, Jr., Bachicha & Casey, P. A., Santa Fe, for plaintiff-appellee.

OPINION

SUTIN, Judge.

Defendant, administrator of the estate of John R. Owens, deceased, appeals an adverse judgment for wrongful death of plaintiff's decedent, Ignacio Torres, growing out of an automobile accident in Otero County, New Mexico. Plaintiff's decedent, his son, was a Mexican National, illegally in the United States, and plaintiff, the administrator of his son's estate, is also a Mexican National. Torres and Owens both died in this accident. We affirm.

A. *Directed verdict for plaintiff on liability affirmed.*

Defendant claims the trial court erred in directing a verdict for plaintiff on the issue of liability (1) because there were jury issues on negligence, contributory negligence, proximate cause, and assumptions of risks; and (2) because there was substantial evidence that plaintiff's decedent was involved in a criminal conspiracy while riding in a car operated by another person.

*First,* the evidence is undisputed that Owens drove on the wrong side of the highway, collided with a car in which Torrez was riding. Owens was negligent as a matter of law and his negligence proximately caused Torres' death.

Torres was riding in a car driven by another person. The burden was on defendant to prove that Torres was guilty of contributory negligence. There was no evidence of Torres' conduct which gives rise to any claim of contributory negligence. Torres had no authority or control over the driver, and no voice in directing operation of the vehicle. The negligence of the driver, if any, cannot be imputed to the passenger. *Silva v. Waldie,* 42 N.M. 514, 82 P.2d 282 (1938).

Even if the drivers of both vehicles were negligent, Torres, a passenger in one of the vehicles, is not subject to the same bar to recovery that applied to his driver. *Bailey v. Jeffries-Eaves, Inc.,* 76 N.M. 278, 414 P.2d 503 (1966).

The trial court properly refused to submit the issue of decedent's contributory negligence to the jury. *Tauch v. Ferguson-Steere Motor Company,* 62 N.M. 429, 312 P.2d 83 (1957).

*Second,* the record shows that Torres was riding in a car driven by a person who pled guilty to a felony—transporting aliens illegally within the United States. There was, however, no evidence of a criminal conspiracy. Furthermore, such a criminal conspiracy has no bearing upon issues of negligence or contributory negligence of the persons in the vehicle involved in the accident.

B. *Defendant was not entitled to a directed verdict or summary judgment.*

Defendant claims he was entitled to summary judgment or a directed verdict because Torres was an illegal alien at the time of the accident.

Any right of action for wrongful death is of statutory origin, such right not existing at common law. *Romero v. Atchison, Topeka & Santa Fe Railway Company,* 11 N.M. 679, 72 P. 37 (1903).

Statutory liability in damages for death by wrongful act is broad. It does not limit liability for death to persons who are citizens of the United States. Section 22–20–1, N.M.S.A. 1953 (Vol. 5) reads:

Whenever the death of *a person* shall be caused by the wrongful act, neglect or

default of another, . . . and the act, or neglect, or default, is such as would, *if death had not ensued,* have entitled the party injured to maintain an action and recover damages in respect thereof, then, and *in every such case,* the person who . . . would have been liable, if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured. [Emphasis added].

The legislature has restricted the rights of aliens in other areas. Alcoholic licenses are limited to citizens of the United States. Section 46–5–14, N.M.S.A. 1953 (Repl.Vol. 7). An alien who is legally in the United States and has lived in New Mexico for ninety days may apply for a hunting and fishing license. Section 53–3–1.3, N.M.S.A. 1953 (Repl.Vol. 8, pt. 1, 1973 Supp.). See also, § 70–1–24, N.M.S.A. 1953 (Repl. Vol. 10, pt. 2); N.M.Const. Art. II, § 22. No restrictions were placed on aliens in the Wrongful Death Act. This represents the public policy of the state. *Patek v. American Smelting & Refining Co.,* 154 F. 190 (8th Cir. 1907).

■ We affirm that the word "person" in the Wrongful Death Act includes a nonresident alien who is present illegally in the State of New Mexico.

■ The test as to whether a death action is maintainable is whether deceased, if he had survived, could have maintained the action for injuries received. *Hogsett v. Hanna,* 41 N.M. 22, 63 P.2d 540 (1936).

■ The rule is established that an alien, who is a citizen of a friendly country, and who entered the United States illegally, is entitled to maintain an action for personal injuries. *Commercial Standard Fire And Marine Company v. Galindo,* 484 S.W.2d 635 (Tex.Civ.App. 1972); *Janusis v. Long,* 284 Mass. 403, 188 N.E. 228 (1933); *Martinez v. Fox Valley Bus Lines,* 17 F.Supp. 576 (D.Ill.1936); *Rodney v. Interborough Rapid Transit Co.,* 149 Misc. 271, 267 N.Y.S. 86 (1932); *Woo Sung Ling v. The City of New York,* 276

App.Div. 1026, 95 N.Y.S.2d 908 (1950); *Feldman v. Murray,* 171 Misc. 360, 12 N.Y.S.2d 533 (Sup.Ct. 1939), aff'd, 285 N.Y. 568, 33 N.E.2d 245 (1941).

■ If Torres had lived, he would have had the right to sue for personal injuries. Since he died, his administrator had that right.

C. *Plaintiff administator, a citizen of Mexico, had the power to serve as representative in New Mexico.*

■ Plaintiff administrator, a Mexican National and an alien in the United States, has the right to serve as administrator of his son's estate in the prosecution of this case. Section 22–20–3, N.M.S.A. 1953 (Vol. 5) provides that every wrongful death action shall be brought in the name of the personal representative of the deceased person. The term "personal representative" is used simply to designate the person who may prosecute the action. *Henkel v. Hood,* 49 N.M. 45, 156 P.2d 790 (1945).

Plaintiff administrator comes within the category of "personal representative" and he may maintain this claim for relief. *McGovern v. Philadelphia & R. R. Co.,* 235 U.S. 389, 35 S.Ct. 127, 59 L.Ed. 283 (1914); *Taylor v. Albion Lumber Co.,* 176 Cal. 347, 168 P. 348 (1917); *Cetofonte v. Camden Coke Co.,* 78 N.J.L. 662, 75 A. 913 (1910); *Garvin v. Western Cooperage Co.,* 94 Or. 487, 184 P. 555 (1919); *Mulhall v. Fallon,* 176 Mass. 266, 57 N.E. 386, 54 L.R.A. 934, 79 Am.St.Rep. 309 (1900); *Low Moor Iron Co. v. La Bianca's Adm'r.,* 106 Va. 83, 55 S.E. 532 (1906); *Kellyville Coal Co. v. Petraytis,* 195 Ill. 215, 63 N.E. 94, 88 Am.St.Rep. 191 (1902); *Patek v. American Smelting & Refining Co.,* supra.

D. *Irrevocable consent was irrelevant.*

Defendant contends that plaintiff's late filing of irrevocable consent, immediately before trial, under § 31–1–6(B), N.M.S.A. 1953 (Vol. 5, 1973 Supp.) defeats plaintiff's claim for relief. It provides that a nonresident may qualify as an administrator by filing an irrevocable consent with

the secretary of state. The purpose of this statute is to give consent so that "suits and actions may be commenced against him in the proper court of any county of this state in which cause of action may arise . . . ."

This statute is not applicable in a wrongful death action where a personal representative commences an action against others. This statute applies in cases involving the probate of estates. See *In Re Estate of Tarlton*, 84 N.M. 95, 500 P.2d 180 (1972).

Defendant's claim that the complaint should be dismissed because of late filing is without merit.

### E. *Expert Testimony and Instruction on Damages Not Error.*

Dr. Everett G. Dillman, an economic statistician, testified on behalf of plaintiff on the subject of damages. He is recognized as a competent witness whose qualifications are unimpeachable. *Wilson v. Wylie*, 86 N.M. 9, 518 P.2d 1213 (Ct.App. 1973).

*First,* defendant claims it was error to allow Dr. Dillman to testify to a net loss pecuniary benefit as of the time of trial. The pecuniary benefit as of the date of death was $138,464. As of the date of trial, the pecuniary benefit came to $151,640, a difference of $13,176. Defendant did not object to Dr. Dillman's testimony on this issue of damages and this claim of error is not subject to review.

Defendant argues that Dr. Dillman's figure of $151,640 was based on a hypothetical question, was speculative, and was not based upon the fact that decedent was an illegal alien. He claims Dr. Dillman's background was inadequate in this field. Dr. Dillman's background as an expert is answered by *Wilson v. Wylie,* supra, and Rule 705 of the Rules of Evidence [§ 20–4–705, N.M.S.A. 1953 (Repl.Vol. 4, 1975 Supp.)]. Rule 705 reads:

> The expert may testify in terms of opinion or inference and give his reasons therefor without prior disclosure of the underlying facts or data, unless the judge requires otherwise. The expert may in any event be required to disclose the underlying facts or data on cross-examination.

*Second,* at the close of plaintiff's case, defendant moved to strike the testimony of Dr. Dillman because plaintiff's decedent was an illegal alien and Dr. Dillman testified that the measure of damages was based upon an American working a lifetime. An illegal alien in the United States is entitled to the same rights to damages that a citizen has under the tort laws of the state and federal government. *Low Moor Iron Co.,* supra. *Trotta's Adm'r v. Johnson, Briggs & Pitts*, 121 Ky. 827, 90 S.W. 540 (1906) says:

> We treat him [an illegal alien] as a human being, who, if wronged while within our jurisdiction in any personal or property right, may be redressed in our courts according to the laws of this state, giving such measure of compensation as we deem a proper equivalent for the wrong done. [90 S.W. at 541].

The cause of action created by the Wrongful Death Act inures to the plaintiff as a vested right. *Cetofonte,* supra. This right includes giving an instruction on damages for wrongful death. *Garvin,* supra.

*Third,* defendant objected to the court's instruction on damages because there was an insufficient legal foundation of Dr. Dillman's testimony. This claimed error is without value, as Dr. Dillman's testimony was relevant and competent. The weight to be given to Dr. Dillman's testimony was a matter for the jury to decide.

### F. *Sustaining plaintiff's objection to defendant's question was not error.*

Defendant, on direct examination of a United States border patrolman, asked him this question:

> [A]ssume that this car [in which decedent was riding] was headed north and

continued on up to your check point; do you have an opinion based upon the reliability and thoroughness of your border patrol activities whether this vehicle and or the other occupants in the vehicle would have been successful in passing and in going through and continuing on up on Highway US 54 beyond the check point?

Plaintiff's objection was sustained on the grounds of speculation. Defendant did not tender the patrolman's answer in the record, an aspect essential to a review on appeal. *Kindschi v. Williams,* 86 N.M. 458, 525 P.2d 385 (Ct.App. 1974).

G. *Exclusion of hearsay testimony concerning speed was proper.*

 A state police officer, who had testified that other people were at the scene of the collision, was asked whether a witness had told him that he had seen either one of the vehicles prior to the time the accident happened. Upon objection, the jury was excused. The police officer testified that an unidentified witness told him that the Chevrolet in which Torres was riding had passed him down the road aways at an excessive rate of speed and just prior to the accident.

The trial court sustained an objection to the testimony, as coming within the hearsay rule, because there was no showing whether it was thirty minutes or two minutes before the time of the accident. This testimony was hearsay and did not fall within the exceptions to the hearsay rule. Section 20–4–802, N.M.S.A. 1953 (Repl.Vol. 4, 1975 Supp.).

Furthermore, *Garrett v. Howden,* 73 N.M. 307, 387 P.2d 874 (1963) established as the rule in New Mexico on the admissibility of testimony concerning the speed of an automobile by an unidentified witness, that the admissibility of such testimony rests in the sound discretion of the trial court. In the case before us, there was no abuse of discretion. The exclusion of this evidence will not be disturbed on appeal.

Defendant contends that the hearsay testimony tended to show that Torres could have been guilty of contributory negligence. The speed of the driver of the car in which Torres was an occupant, in the absence of any other evidence, does not create an issue of fact. See *Schall v. Mondragon,* 74 N.M. 348, 393 P.2d 457 (1964).

Affirmed.

IT IS SO ORDERED.

HERNANDEZ and LOPEZ, JJ., concur.